## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KENNIS RIVERA, et al ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Case: 20-cv-01037-JKB |
| ) | |
| JET AUTOMOTIVE SERVICES, LLC, ) | |
| et al ) | |
| ) | |
| Defendants ) | |

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)

Defendants, Jet Automotive Services, LLC ("Jet") and Anthony Korolev, by undersigned counsel, file this Opposition to Plaintiff's Motion for Conditional Certification of a Collective Action Pursuant To 29 U.S.C. § 216(b) (ECF 18), and state as follows:

### I.     FACTS

Jet is a small auto detailing business.  It is owned by Defendant Anthony Korolev. The Plaintiffs worked for Jet as auto detailers for less than twelve months in calendar year 2018.  They performed their work at car dealerships.  The Plaintiffs are partners and live together.  Rivera Tr. 13:3-13:5; 18:2-18:12, attached as Exhibit A; Mejia Tr. 12:6-12:7; 18:9-18:15, attached as Exhibit B.

Jet keeps track of each employee's time on a spreadsheet.  It pays overtime when hourly paid employees work more than forty hours in a week.  E.g., ECF 18-2, p. 34

(showing the Plaintiffs' total hours, regular rate, regular pay, overtime rate and overtime pay); Affidavits of Saul Alexander Guzman Valladares; Caesar Ulises Guzman Valladares; Jose Bermudez and Juan Jose Cruz Campos (all affirming that Defendants paid time and a half for overtime), attached as Exhibit C.

During part of her employment tenure, Ms. Mejia claims she kept track of her working time by hand in a notebook.  ECF 18-2, p. 18-32.  Each day that she worked during that period, she recorded her start time, her stop time, and the elapsed time between her start time and stop time, rounded to the nearest half hour.  She usually worked five days per week.  She claimed she sometimes worked after the dealerships closed.  Ex. B. Mejia Tr. at 27:20-18:7; 29:1-22; 40:21-41:4.

Ms. Mejia did not keep track of her breaks.  She took at least 30 minutes every day for lunch.   As a result, the total elapsed time she recorded each day is at least a half hour more than the time she actually worked. Ex B, Mejia Tr. at pp 49:8-49:21; see also Ex. A, Rivera Tr. 44:13-44:15.

When Ms. Mejia did not record time for a specific day that means she did not work on that day.  Ex. B, Mejia Tr. 34:7-34:14.   Ms. Mejia did not keep track of any other Jet employee's time.

Mr. Rivera has no independent record of his working time.  He claims he was paid by the hour for part of his tenure and a salary for the other part.  He estimates from memory that he worked 48 to "55 or 58" hours per week. He testified that he and Ms. Mejia could only work when the dealership was open.  Ex. A Rivera Tr. at pp.22:5-22:22; 28:19-28:22; 37:20-38:2.

Plaintiffs attached to their motion "a workbook" allegedly showing the difference between the amount of time they worked and the time Jet paid them for their work. ECF 18-1 at p.8.  Mr. Rivera and Ms. Mejia did not prepare the workbook.  When asked about it at her deposition, Mr. Mejia said "I don't know what [the workbook] is."  She did not know who prepare it or whether it was accurate.  Ex. B, Mejia Tr 61:4-61:20.  Mr. Rivera did not prepare the workbook and did not know who did.  He had never seen it before his deposition.  Ex. A, Rivera Tr. 32:13-32:16; 33:2-33:5.

The workbook is not accurate.  For example, the workbook shows Ms. Mejia worked on the following days:  June 27; July 4, 6, 7, 10, 24, 31, August 7, 13, 14, 15, 21, 22; September 4, 25, October 2, 8, 9, 10, 17, November 8, 13, 20, 21, 27, and December 5, 11. ECF 18-2, pp. 10-16 Ms. Mejia's handwritten notes show she did not work on those days.  (ECF 18-2, pp. 21-32).  The workbook also does not subtract time for the plaintiffs' breaks.

The workbook uses "Ms. Mejia's handwritten notes" to calculate Mr. Rivera's time. Mr. Rivera testified that Ms. Mejia's handwritten notes do not accurately account for his time.  Ex. A, Rivera Tr. at p.21:4-21:13.

Ms. Mejia and Mr. Rivera also submitted nearly identical affidavits written in English.  ECF 18-2 pp 3-9.  Ms. Mejia does not speak any English.  Ex B, Mejia Tr. at p. 15:3-15:5.  Mr. Rivera speaks a little English.  Ex. A, Rivera Tr. at p. 14:4-14:5. Both stated:  "Upon information and belief, Defendant Jet Auto failed to pay overtime compensation, accurately account for hours worked, and provide proper tax information to me and the other employees of Defendant Jet Auto;" and "In my

estimation, over the three-year period preceding the filing of this lawsuit, Defendant Jet Auto has employed in excess of 20 workers in the capacity of car detailer, all of whom were subject to unlawful wage practices of Defendant Jet Auto." ECF 18-2, pp. 5 & 9.

With respect to the "twenty workers", both Ms. Mejia and Mr. Rivera were each able to identity five individuals and only by their first names. Ex. B, Mejia Tr. p. 19:2-19:20; Ex. A. Rivera Tr. at p. 48:10-48:14. Four of the Jet employees named by the Plaintiffs affirmed that Jet paid them for all of the hours that they worked, including time and a half for working overtime. Exhibit C.

## II.    PROCEDURAL POSTURE

Plaintiffs filed this case on April 21, 2020, about 15 months after they stopped working for Jet. ECF 1. On July 27, 2020, the Court issued a proposed Scheduling Order with a December 10, 2020 discovery deadline. ECF 6-1. At Plaintiffs' request (with Defendants' consent), the Court's Scheduling Order extended the discovery deadline to March 10, 2021. ECF 9.

Between August 12, 2020, the date the Court issued the Scheduling Order, and the close of discovery, a period of almost seven months, Plaintiffs initiated zero written discovery and took zero depositions. On the last day of the discovery period, Plaintiffs issued to Defendants thirty-five document requests and twenty-five interrogatories and filed a motion seeking sixty additional days of discovery. ECF 19. Defendants filed an opposition to Plaintiffs' motion. ECF 22.

In the eleven months this case has been pending, no Plaintiff has opted in to this action.

### III.   ARGUMENT

#### a.  LEGAL STANDARD

The FLSA provides in claim for the minimum wage or overtime an action may maintained against an employer "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. Section 216(b).  Further, other employees who are similarly situated may "opt in" to the suit by filing their statements of consent with the court. Id; see also Chado v. Nat'l Auto Insps., LLC, No. JKB-17-2945, 2019 U.S. Dist. LEXIS 75392, at *5-6 (D. Md. May 2, 2019).  Whether to grant conditional certification is left to the Court's discretion. Syrja v. Westat, Inc., 756 F. Supp. 2d 682, 686 (D. Md. 2010).

When deciding whether to certify a collective action pursuant to the FLSA, courts generally follow a two-stage process." Butler v. DirectSat USA, LLC, 876 F. Supp. 2d 560, 566 (D. Md. 2012).  In the first stage, commonly referred to as the notice stage, the Court makes a "threshold determination of 'whether the plaintiffs have demonstrated that potential class members are 'similarly situated,' such that court-facilitated notice to putative class members would be appropriate." Syrja v. Westat, Inc., 756 F.Supp.2d 682, 686 (D.Md. 2010).  Stage one is decided "early in a proceeding, typically before any significant discovery." Houston v. URS Corp., 591 F. Supp. 2d 827, 831 (E.D. Va. 2008); Buszta v. Quality Midwestern Holdings, Inc., No. 1:18-cv-593, 2019 U.S. Dist. LEXIS 64458 (E.D. Va. Mar. 1, 2019).

In the second stage, following the close of discovery, the court conducts a "more stringent inquiry" to determine whether the plaintiffs are in fact "similarly situated," as required by § 216(b). Rawls v. Augustine Home Health Care, Inc., 244 F.R.D. 298, 300 (D.Md. 2007).   At this second stage, courts have considered three factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." Id., quoting Thiessen v. Gen. Elec. Capital Corp., 996 F. Supp. 1071, 1081 (D. Kan. 1998).

b.   THIS CASE IS AT THE SECOND STAGE AND THE PLAINTIFFS FILED THIS MOTION TOO LATE.

After initiating no discovery for nearly seven months, the Plaintiffs filed this motion seven days before the discovery deadline.  Plaintiffs seem to think they are at stage one because at the time they filed this motion for conditional certification, they had "not issued discovery in this matter." ECF 18-2 at p2.  But the Scheduling Order's deadline to add parties (December 11, 2020) and to complete discovery (March 10, 202) have passed.  ECF 9.

Courts routinely deny motions for conditional certification motions filed near or after the close of discovery because they "unfairly prejudice Defendants and delay [the] lawsuit." Buszta v. Quality Midwestern Holdings, Inc., No. 1:18-cv-593, 2019 U.S. Dist. LEXIS 64458 (E.D. Va. Mar. 1, 2019); Higgins v. James Doran Co., Civil Action No. 2:16-2149-RMG, 2017 U.S. Dist. LEXIS 119139 (D.S.C. July 28, 2017).

Plaintiffs' motion for conditional certification is equivalent to a request to: (1) reopen discovery for the identification of possible opt-in plaintiffs, (2) hold discovery

6

open for the notice period, (3) grant plaintiffs an indefinite extension of the time to add parties, *nunc pro tunc*, (4) continue to hold it open for further discovery regarding the claims of the opt-in plaintiffs, (5) adjudicate final certification, and then (6) return the litigation to the posture it was in as of the discovery deadline. See Higgins, 2017 U.S. Dist. LEXIS 119139, at *6.

While this delay is happening, the statute of limitations for the putative plaintiffs who worked with the Ms. Mejia and Mr. Rivera "continues to run."  ECF 18-1, p. 2.  Should the Court grant this motion, by the time plaintiffs' send the notice they seek to send to the putative plaintiffs they worked with, most of their claims will be barred.  Plaintiffs only worked for Jet between February and December 2018. Claims by putative plaintiffs arising three years before the date of this filing are already barred.  Every passing week bars another week of claims.

Plaintiffs should not be rewarded for waiting: (a) fifteen months to file suit after their employment with JET terminated, then (b) another eleven months after filing suit to file the instant motion.  It is not clear why Plaintiffs waited so long as they did not seek to obtain any additional information from the date they left Jet to the date they filed their motion.  Their motion for conditional certification should be denied because they filed it too late.

> c.  PLAINTIFFS CONCLUSORY ALLEGATIONS DO NOT SUPPORT THAT THEY ARE SIMILARLY SITUATED TO ANY OTHER JET EMPLOYEES.

Ms. Mejia's case is based almost entirely on handwritten notes she claims she kept of her time.  Ms. Mejia did not record the time worked by any other Jet employee.

Mr. Rivera's case is based on his estimate of his working time entirely from memory. Both Plaintiffs claim they worked more than Jet's contemporaneous records show they worked.  But Jet's records show defendants accounted for and paid overtime to hourly paid Jet employees.[1]

Plaintiffs assert in affidavits written for them in English "upon information and belief" that Jet did not pay overtime to other employees.[2]  At their depositions, Plaintiffs identified a few other employees.  Four of those employees have affirmed that Jet did pay overtime and that they are not owed any back wages.  In the over two years since the Plaintiffs stopped working for Jet, there is no evidence that any other Jet employee is seeking unpaid overtime.  No one has opted into this case.

Courts have consistently found at stage one of the conditional certification analysis that bare assertions such as those that the plaintiffs make in their declaration insufficient to satisfy their burden. See <u>Freeman v. Wal-Mart Stores, Inc.</u>,

---

[1]    Plaintiffs obtained Jet's payroll spreadsheet through an exchange of information related to the parties' efforts to settle this case.  Ex. D.  Plaintiffs did not obtain the spreadsheet in discovery.

[2]    Because both Ms. Mejia and Mr. Rivera do not speak or write fluent English, these declarations would likely violate Federal Rule of Evidence 604, which requires that "[a]n interpreter must be qualified and must give an oath or affirmation to make a true translation." <u>Jack v. Trans World Airlines, Inc.</u>, 854 F.Supp. 654, 659 & n.4 (N.D. Cal. 1994).  As Plaintiffs have failed to produce the original copies of the affidavits written in the Plaintiffs' native languages nor any declarations certifying the translation, neither the Defendants nor the Court have any way to verify the veracity of the translation. See <u>Sicom S.P.A. v. TRS Inc.</u>, 168 F.Supp. 698, 709 (S.D.N.Y. 2016) ("If the declarant himself does not speak and read English… the party relying on his English-language declaration must also submit documents sufficient to establish that he understood what he was signing."); <u>Huang v. H & A Entertainment, Inc.</u>, 2010 WL 2670703, at *1 (E.D.N.Y. June 29, 2010) (stating that a party submitting a declaration must do so in the language they read and speak and include a certified translation into English).

256 F.Supp.2d 941, 945 (one that. 2003) ("unsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden") (citing <u>Haynes v. Singer Co.</u>, 696 F.2d 884, 887 (11th Cir. 1983)); <u>H & R Block, Ltd. v. Housden</u>, 186 F.R.D. 399, 400 (E.D.Tex. 1999) (denying request for court facilitated notice where plaintiffs "failed to identify potential plaintiffs, submit affidavits of potential plaintiffs or submit any other evidence that might show a widespread plan of discrimination existed"); see also <u>Slavinski v. Columbia Ass'n, Inc.</u>, Civ. No. CCB-08-890, 2011 U.S. Dist. LEXIS 33729 (D.Md. Mar. 30, 2011) (denying conditional certification where plaintiff provided "no evidence demonstrating  that [alleged similarly situated] employees performed similar functions or similar levels of function to [Plaintiff]").

As Judge Legg explained in <u>D'Anna v. M/A-COM, Inc.</u>, 903 F. Supp. 889, 894 (D. Md. 1995) (citations omitted):

> As a matter of sound case management, a court should, before offering [to assist plaintiff in locating additional plaintiffs], make a preliminary inquiry as to whether a manageable class exists. . . . The courts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." Furthermore, an employer should not be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense.

This case is at stage two where the plaintiffs' burden is far higher.  On this record, with the minimal information provided by the Plaintiffs, the Court cannot determine whether "a manageable class exists," nor can it fulfill its responsibility of "avoid[ing] the 'stirring up' of litigation through unwarranted solicitation" and preventing a "frivolous fishing expedition." Accordingly, Plaintiffs' motion should be

denied because they did not meet their burden of proving they are similarly situated to other employees.

> d. IF THE COURT CERTIFIES A COLLECTIVE, IT SHOULD BE LIMITED TO THE TIME PERIOD THE PLAINTIFFS' WORKED FOR JET.

If the Court grants this motion, the time period for the collective should commence in February 2018 and end in December 2018. This is the period the Plaintiffs worked. The Plaintiffs have not offered any meaningful evidence that they or anyone else has actual knowledge of an alleged failure by Jet to properly pay employees before Plaintiffs started working for Jet or after Plaintiffs' relationship with Jet ended.

In Calder v. GGC-Baltimore, LLC, No. BPG-12-2350, 2013 WL 3441178, at *2 (D. Md. July 8, 2013), the defendant raised the plaintiffs' lack of personal knowledge of alleged violations prior to the time period when they worked for the defendant for the Court's consideration. Despite the allegations of one of the plaintiffs that she was "confident" about defendant's employment of current and former employees over the past three years, Magistrate Judge Gesner determined that the plaintiffs "ha[d] offered no basis to establish any personal knowledge of any time frame other than when [one of the plaintiffs] worked for defendant." Id.

Specifically, the court considered the insufficiency of the plaintiff's affidavit, which "ma[de] no allegation regarding any of defendant's practices before" her date of employment and after she ceased working for the defendant. Id. As a result, Magistrate Judge Gesner limited conditional certification to a collective only of

individuals who worked for defendant during the time period when plaintiff did so. Id.

Any conditional certification of a collective here should for the same reason be limited to February 2018 to December 2018.

> e. SHOULD THE COURT GRANT CONDITIONAL CERTIFICATION, PLAINTIFFS' PROPOSED NOTICE IS DEFICIENT.

Should the Court grant the Plaintiff's motion for conditional certification, the notice Plaintiffs propose to be sent to the putative class is deficient in several ways.

First, the Plaintiffs only moved for conditional certification of their claims under the Federal Labor Standard Act. Mention of Plaintiffs' other state law claims and tax allegations in a notice to putative class members would be inappropriate. Therefore, defendants request that the Court delete the ~~struck-through~~ language from the notice as indicated below:

- ~~"Moreover, they have alleged that the tax forms (Form 1099) received from Defendants were incorrect."~~

- This case has been brought under the Fair Labor Standards Act, ~~the Maryland Wage and Hour Law, and the Maryland Wage Payment and Collection Law (collectively "the Law")~~.

- Plaintiffs' claims seek to recover unpaid wages, as well as attorneys' fees and costs, ~~interest~~ and ~~as much as triple~~ damages to the extent allowed by the Law

- If you are either a past or current employee of JET AUTOMOTIVE SERVICES, LLC who worked at any time since January 2018, and you worked over 40 hours in a workweek, ~~or you received improper tax information,~~ and you believe you are entitled to receive overtime wages, you may be eligible to participate in this lawsuit.

Second, the Plaintiff's proposed Notice does not state set forth defendants' position.  Defendants request that the Court add the following **bolded** language to the Notice:

- **Defendants deny the Plaintiffs' claims, assert they paid overtime, and claim they do not owe damages**. The Court has not decided the merits of any claim or any defense asserted by any party to this lawsuit, whether Plaintiffs are eligible or entitled to any additional wages or remedies, or whether any party is right or wrong.

Third, the Plaintiffs' proposed Notice is overbroadly addressed to all Jet employees.  This Court recently held that the definition of an FLSA collective action class should limit the scope of the class to individuals who possess claims similar to the plaintiffs rather than broadly defining it to include all individuals who performed work similar to the plaintiffs. See Baylor v. Homefix Custom Remodeling Corp., 443 F. Supp. 3d 598, 608 (D. Md. 2020). Similarly, in this case, in order to keep the class manageable, the Court should appropriately limit the class to "detailers who worked at Jet Automotive between February 2018 and December 2018 and who claim that they were not paid for all hours worked."

Fourth, Plaintiffs' Proposed Notice stated that it applies to employee who worked for Jet any time "from January 2018 to the present."   ECF 18-2 p. 126.  It is

unclear how Plaintiffs picked January 2018.  As noted above, this Court should limit the time period of the collective to be from February 2018 to December 2018.[3]

Finally, Plaintiffs' proposed Notice does not include a case caption. Defendants request that it be added so putative plaintiffs can seek additional information about the case.

      f.     DEFENDANTS SHOULD NOT BE REQUIRED TO POST THE NOTICE AT THE DEALERSHIPS WHERE JET PERFORMS WORK OR IT INCLUDE IT WITH PAYSTUBS.

Plaintiffs request that, in addition to being authorized to mail and email Notices to employees, Defendants should be required to post the Notice "in a conspicuous place on the premises of all Defendant Jet Auto facilities and location (including all auto dealership support locations), e.g., alongside the employee time clock." ECF 18-1, p. 16.  Plaintiffs also request that the Notice be included "with paychecks and/or paystubs." Id.

Plaintiffs offer no reason why dissemination of the Notice via mail and email is insufficient or otherwise why Defendants should be ordered to post the Notice at its workplace or send an extra notice via a paystub. This Court and others deny requests to order a defendant to post notice of an FLSA collective action at its workplace or on a paystub when plaintiffs fail to show that it is warranted. See Calderon v. GEICO Gen. Ins. Co., No. RWT 10cv1958, 2011 U.S. Dist. LEXIS 2815

_____

[3] Alternatively, the operative time period for certification of a class should be the three-year period preceding the date that the court enters an order granting collective action certification. See Baylor v. Homefix Custom Remodeling Corp., 443 F. Supp. 3d 598, 608 (D. Md. 2020).

(D. Md. Jan. 12, 2011) (denying request to post notice in the workplace and include it with paychecks); Graham v. Hall's S. Kitchens, LLC, 331 F.R.D. 619, 623 (D.S.C. 2018) (denying plaintiffs' request to post notice of FLSA collective action at defendant's workplace); McCoy v. RP, Inc., No. 2:14-cv-3171-PMD, 2015 U.S. Dist. LEXIS 142521, at *13 (D.S.C. Oct. 19, 2015) (same); Capsolas v. Pasta Res., Inc., Civ. A. No. RJH-10-CIV-5595, 2011 WL 1770827, *5 (S.D.N.Y. May 9, 2011) (denying request to post notice as it was premature to conclude that mailed notice would be ineffective).

Here, Plaintiffs offer no reason why physical posting of the notice is warranted. Defendants perform most of their work remotely, on properties owned by dealerships. As such, defendants do not own any "facilities" or "support locations." Defendants would not be permitted to post a Notice on dealership property.

## IV. CONCLUSION

For the reasons explained above, Plaintiffs' Motion for Certification should be denied because it was filed too late and plaintiffs have failed to prove they are similarly situated to other Jet employees. In the alternative, should the Court grant conditional certification, such certification should be limited to care detailers who worked during the period that the plaintiffs worked and who did not receive wages for all hours worked, and the Notice sent to the putative plaintiffs should incorporate those changes set forth above.

Respectfully submitted,

__/s/_____
James Edward Rubin (Bar No. 456945)
The Rubin Employment Law Firm, P.C.
600 Jefferson Plaza
Suite 204
Rockville, Maryland 20852
Phone: (301) 760-7014
Email:  jrubin@rubinemploymentlaw.com
Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of April, 2021, I caused a copy of the foregoing to be served upon the following person(s) via the Court's ECF system upon:

> Michael J. March
> Federal Bar No.: 20377
> Michael@usataxlaw.com
> Crepeau Mourges
> 1344 Ashton Road, Suite 110
> Hanover, Maryland 21076

_____/s/_____
James Edward Rubin